19-mj-5122-JGD

## <u>AFFIDAVIT OF U.S. POSTAL INSPECTOR GINA GENTILUOMO</u>

I, Gina Gentiluomo, being duly sworn, state the following:

## **INTRODUCTION**

1.   I am submitting this affidavit in support of an application for a criminal complaint charging Binh Thanh LE ("LE"), Steven McCALL ("McCALL") and Allante PIRES ("PIRES") with conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances, including 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a "ecstasy," a Schedule I controlled substance, and Ketamine, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C).

2.   Since June 2018, I have been conducting a criminal investigation into the activities of several individuals, both known and unknown, including LE, McCALL, and PIRES in connection with their involvement in the receipt, manufacture, and distribution of controlled substances over the internet.  As part of that investigation, I executed an affidavit on March 26, 2019, in support of numerous search warrants, including 1749 Central Street, Suite 3, Stoughton, Massachusetts ("the Stoughton Location").  A copy of that affidavit (hereinafter "the March 26, 2019 Gentiluomo Affidavit") is attached to this affidavit, and I am incorporating by reference that affidavit in its entirety.  My biographical information is set forth in the March 26, 2019 Gentiluomo Affidavit and has not changed.

3.   This affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrants for LE, McCALL, and PIRES.  As a result, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.  Rather, I have included only those facts that I believe are necessary to establish

probable cause for the issuance of the requested complaint and arrest warrants. Facts not set forth herein (or in the incorporated March 26, 2019 Gentiluomo Affidavit) are not being relied upon in reaching my conclusion that there is probable cause to support the issuance of the requested complaint and arrest warrants. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

4. I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in this investigation; (b) my review of business records from various sources, including the United States Postal Service ("USPS"); (c) information provided to me orally and in writing by other law enforcement agencies participating in this and related investigations; and (d) my experience and training as a criminal investigator. I am also familiar with the facts and circumstances of this investigation from oral and/or written reports by other Postal Inspectors with the United States Postal Inspection Service ("USPIS"), agents from Homeland Security Investigations ("HSI"), Customs and Border Protection ("CBP"), and members of the Massachusetts State Police ("MSP") who have assisted in this investigation.

5. In the March 26, 2019 Gentiluomo Affidavit, I discussed the fact that since June 2018, I have been conducting an investigation of LE and others, who I believe were engaged in the illicit manufacture and distribution of controlled substances via the internet. I also discussed evidence supporting my belief that LE, with the assistance of others, was: (1) receiving wholesale quantities and/or raw materials of controlled substances at various locations in southern Massachusetts; (2) processing and manufacturing those controlled substances at the Stoughton Location (1749 Central Street, Suite 3, Stoughton, Massachusetts); (3) receiving orders for those drugs (including, but not limited to, MDMA, Ketamine, and Xanax) via the

internet using the vendor name *EastSideHigh*; (4) filling those orders at the Stoughton Location; and (5) distributing those drugs via the United States Postal Service ("USPS"). As will be discussed below, I believe that Steven McCALL ("McCALL") and Allante PIRES ("PIRES") knowingly assisted LE in this drug-trafficking operation.

6. Since my execution of the March 26, 2019 Gentiluomo Affidavit, numerous search warrants have been obtained and executed as part of the ongoing investigation. As will be discussed below, the execution of these search warrants has resulted in seizures totaling more than 23 kilograms of suspected MDMA and more than 7 kilograms of suspected Ketamine. (These seizures are in addition to the various seizures discussed in paragraphs 42 and 47 of the March 26, 2019 Gentiluomo Affidavit.)

**March 27, 2019: Search of the Stoughton Location**

7. On March 27, 2019, law enforcement officers executed the federal search warrant at the Stoughton Location. After knocking and announcing their presence, the officers then forcibly entered the Stoughton Location. As they were entering the location, the officers observed an individual, subsequently identified as Steven McCALL ("McCALL"), exit the location through a separate door. McCALL was detained and subsequently arrested by law enforcement officers. At the time, McCALL was wearing latex gloves and a respirator, both of which, I believe based upon my knowledge, training and experience, are consistent with the protective gear typically worn by individuals engaged in drug manufacturing. Agents subsequently executed the search warrant at the Stoughton Location and observed and/or seized, *inter alia,* the following:

   a. a pill press;

   b. a large quantity of white powder, a sample of which was field-tested with presumptive positive results for Ketamine;

3

    c. a large quantity of a dark colored rock-like substance, a sample of which was field-tested with presumptive positive results for Methamphetamine or MDMA (Ecstasy);

    d. a large quantity of brown tablets, one of which was field-tested with presumptive positive results for Methamphetamine or MDMA (Ecstasy);

    e. more than $100,000 in U.S. currency inside a safe;

    f. numerous empty Priority Mail and Priority Mail Express Flat Rate envelopes;

    g. numerous empty beige padded manila envelopes;

    h. numerous empty silver Mylar packets;

    i. mailing labels bearing the return address of "RETURN, 95 WASHINGTON ST STE 425, CANTON, MA 02021-4006";

    j. 14 brown cardboard boxes bearing the same international return address and the following delivery addresses: 1) "DUANE FREEMAN, 20 ROCHE BROTHERS WAY, STE 6-384, NORTH EASTON, MA 02356, USA," 2) "DUANE FREEMAN, PO BOX 604, NORTH EASTON, MA 02356, USA," and 3) "BL PRODUCTONS, 18 WASHINGTON STREET, STE 234, CANTON, MA 02021, USA";

    k. Numerous children's Lego boxes, one of which contained compressed brown crystal-like substance in a vacuum-sealed bag, two of which contained vacuum-sealed gray pills, and four of which contained compressed white powder in vacuum-sealed bags;

    l. at least three digital scales of varying sizes;

    m. two impulse heat-sealing machines;

    n. one FoodSaver vacuum machine; and

    o. various personal items, including mail, in LE's name.

At the time of the search, agents also observed a desktop computer in the Stoughton Location that was opened to the *EastSideHigh* vendor page on the Dark Net Market ("DNM") *Wallstreet Market.*

8. Based upon my training and experience as well as my participation in this investigation, it is apparent to me from these seized materials that manufacturing and distribution of controlled substances was taking place at the Stoughton Location prior to the execution of the federal search warrant and that McCALL was engaged in drug manufacturing immediately prior to the agents entering into the Stoughton Location.

9. Since the execution of the search warrant, agents have spoken with the landlord for the Stoughton Location, who has confirmed that LE signed the lease and was responsible for the payment of monthly rent for the Stoughton Location.

10. Agents have also spoken with a cooperating witness, who has confirmed that the Rockland CMRA Mailbox discussed in the March 26, 2019 Gentiluomo Affidavit (Private Mailbox #162 located at the UPS Store at 319 Centre Avenue in Rockland, Massachusetts) was opened at LE's suggestion.

**Seizure of Additional Parcels Delivered to Addresses Associated with LE and Others Operating as *EastSideHigh***

11. On March 26, 2019, this Court issued a federal search warrant in 19-mj-5059-JGD authorizing the search of packages delivered to what I referred to in the March 26, 2019 Gentiluomo Affidavit as "The North Easton Post Office Box." I executed that search warrant on April 5, 2019, and seized two packages addressed to "Duane Freeman, PO Box 604, North Easton, MA 02356, USA." Both of these packages bore the same international return address observed on boxes found in the Stoughton Location and both also bore an exterior packing list identifying the contents as "Lego box for kids." Inside each of the two packages was: (1) one Lego box containing one Mylar bag; (2) within the Mylar bag was a vacuum-sealed bag containing a further vacuum-sealed bag; and (3) within the second vacuum-sealed bag was a white-brown crystal-like substance. Based upon my participation in this investigation and the

5

field-test results of similar-appearing crystal-like substances that were found at the Stoughton Location and field-tested with presumptive positive results for MDMA, I believe that each of these two seized packages contain controlled substances.[1]

12.     On April 2, 2019, this Court issued federal search warrants authorizing the seizure and search of two packages ("Subject Package #1" and "Subject Package #2") that were at the North Easton, Massachusetts Post Office.  Both of these packages were addressed to "DUANE FREEMAN, 20 ROCHE BROTHERS WAY, STE 6-384, NORTH EASTON, MA 02356, USA" (which was also the address on empty boxes found in the Stoughton Location).  Both of these packages bore the same international return address observed on boxes found in the Stoughton Location and both also bore an exterior packing list identifying the contents as "Lego box for kids."  On April 4, 2019, I executed these two search warrants.  Inside each of the two packages was:  (1) one Lego box containing one Mylar bag; (2) within the Mylar bag was a vacuum-sealed bag containing a further vacuum-sealed bag; and (3) within the second vacuum-sealed bag was a white-brown crystal-like substance.  Based upon my participation in this investigation and the presumptive positive for MDMA field-test results of similar-appearing crystal-like substances that were seized from the Stoughton Location, I believe that each of these two seized packages contain controlled substances.

---

[1] On March 26, 2019, this Court issued a federal search warrant authorizing the search of packages delivered to what I referred to in the March 26, 2019 Gentiluomo Affidavit as the "Canton CMRA Mailbox."  I executed that search warrant on March 27, 2019, and seized one Priority Mail Express envelope addressed to "BL Productions, 18 Washington St, Ste 234, Canton, MA 02021-4404" which was found to contain nine pills (approximately two grams) with the word "Xanax" embossed on one side and "2" embossed on the other side.  I also searched a second Amazon padded envelope that was in the Canton CMRA Mailbox.  This envelope contained "Instant Fentanyl (Fen) Synt…rug Test Dip Card (10 Pack)."

13.     On April 2, 2019, this Court issued a search warrant authorizing the seizure and search of a third package ("Subject Package #3") addressed to "BL Productons" at the Canton CMRA Mailbox located at 18 Washington Street in Canton, Massachusetts.  (The Canton CMRA Mailbox was discussed in the March 26, 2019 Gentiluomo Affidavit and was rented to LE doing business as "BL Productions.")  On April 5, 2019, this Court issued two additional search warrants authorizing the seizure and search of two additional packages ("Subject Package #4" and "Subject Package #5") also addressed to "BL Productions" at the Canton CMRA Mailbox.   Each of these three packages bore the same international return address observed on boxes found in the Stoughton Location and on Subject Package #1 and Subject Package #2.  Each package also bore an exterior packing list identifying the contents as "Lego box for kids."  On April 8, 2019, I executed these three search warrants.  Each of the three packages contained the following:  (1) one Lego box containing one Mylar bag; (2) within the Mylar bag was a vacuum-sealed bag containing a further vacuum-sealed bag; and (3) within the second vacuum-sealed bag was a white-brown crystal-like substance.  Based upon my participation in this investigation and the presumptive positive for MDMA field-test results of similar-appearing crystal-like substances that were at the Stoughton Location, I believe that each of these three seized packages contain controlled substances.

**Seizure of Envelopes Believed to be Mailed by LE and Others Associated with *EastSideHigh***

14.     On March 28, 2019, I applied for and obtained federal search warrants for 27 Priority Mail and Priority Mail Express envelopes that had been sent from Post Offices in West Bridgewater, North Easton, and South Easton, Massachusetts.  The envelopes were of the same type and size found in the Stoughton Location.  The envelopes each bore a return address of "RETURN, 95 WASHINGTON ST STE 425, CANTON, MA 02021-4006."   (As stated above,

labels bearing this return address were found in the Stoughton Location.) I executed the search warrants on these 27 envelopes on April 3 and 4, 2019. Each of the 27 envelopes contained substances consistent in appearance with substances that were seized at the Stoughton Location and that had been field-tested with presumptive positive results for Ketamine or MDMA.

### March 27, 2019: Arrest of LE and PIRES

15.    As briefly discussed in footnote 15 of the March 26, 2019 Gentiluomo Affidavit, during the week leading up to March 27, 2019, I was in undercover communications with someone associated with *EastSideHigh* (later determined to be LE) concerning that individual's expressed interest to exchange a quantity of Bitcoin for U.S. currency.[2]

16.    In February 2019, this individual was originally put in touch with me by a Homeland Security Investigations (HSI) agent who, while acting in an undercover capacity, had been communicating with the representative from *EastSideHigh*. The representative from *EastSideHigh* asked the undercover agent if the agent knew of anyone who could exchange Bitcoin for U.S. currency. The undercover agent informed the representative from *EastSideHigh* that he did and that he would provide the *EastSideHigh* representative's contact information to the exchanger. Assuming the identity of a Bitcoin exchanger, I then contacted the representative from *EastSideHigh*. During our initial communications, the *EastSideHigh* representative

---

[2]    As discussed in the March 26, 2019 Gentiluomo Affidavit, individuals store information about their Bitcoin in a Bitcoin virtual "wallet," which acts as a Bitcoin equivalent of a Bank account. Bitcoin wallets have a private key and a public key, the latter of which is commonly known as the wallet address. Bitcoin wallets are electronic in nature and may be stored on mobile devices. As also discussed in the March 26, 2019 Gentiluomo Affidavit, DNM vendors often need to exchange the crypto-currency (*e.g.,* Bitcoin) proceeds of their illicit activity into fiat currency. The purchase and sale of Bitcoin can be conducted through peer-to-peer transactions by individuals meeting in person where the seller sends Bitcoin from their digital Bitcoin wallet directly to a buyer's Bitcoin wallet in exchange for a predetermined amount of fiat currency. *See generally id.*, ¶¶ 15, 17.

informed me that he had already scheduled Bitcoin exchanges with other individuals; however, the *EastSideHigh* representative further advised me that he believed that he would have more Bitcoin to exchange the following month (March 2019).

17.     On March 19, 2019, the representative from *EastSideHigh* contacted me in my undercover capacity via an encrypted electronic communication application and expressed interest in exchanging $150,000 worth of Bitcoin. Over the following days, the representative from *EastSideHigh* and I negotiated the amount to be exchanged and the date on which to do the exchange. Ultimately, we agreed to meet at the Hampton Inn in Norwood, Massachusetts at 12:00 p.m. on March 27, 2019 for the purpose of exchanging $175,000 worth of Bitcoin.

18.     At approximately 11:15 a.m. on March 27, 2019, law enforcement officers conducting physical and electronic surveillance of 1749 Central Street in Stoughton, Massachusetts observed PIRES park a black Mercedes sedan, bearing Massachusetts registration 8ET546, in the parking lot.[3] According to records at the Massachusetts Registry of Motor Vehicles, PIRES is the registered owner of this vehicle (hereinafter, "PIRES's Mercedes"). Surveillance officers observed PIRES exit PIRES's Mercedes and walk towards the front entrance of 1749 Central Street and enter through the doors.

19.     Roughly 30 minutes later, at approximately 11:45 a.m., law enforcement officers conducting physical and electronic surveillance of 1749 Central Street in Stoughton, Massachusetts observed LE and PIRES exit through the front entrance of 1749 Central Street, get into PIRES's Mercedes, and depart the area.

---

[3] As will be discussed later in this affidavit, officers had previously observed PIRES via electronic and physical surveillance on numerous occasions at 1749 Central Street in Stoughton, Massachusetts.

20. Roughly 15 minutes later, at approximately 12:00 p.m. on March 27, 2019, LE arrived at the agreed-upon location for the Bitcoin exchange (*i.e.,* the Hampton Inn in Norwood, Massachusetts). Another Postal Inspector ("the UC") assumed the undercover identity of the Bitcoin exchanger who had been communicating electronically with the representative from *EastSideHigh*. The UC met LE in the lobby of the Hampton Inn and brought him to a hotel room. I was already in the hotel room in an undercover capacity acting as the girlfriend of the Bitcoin exchanger (*i.e.,* the UC). The UC and LE entered the hotel room at approximately 12:05 p.m. The UC and LE acknowledged me and commenced negotiations for the Bitcoin exchange. The UC and LE eventually agreed to exchange $200,000 worth of Bitcoin, instead of the previously agreed-upon amount of $175,000. LE used his mobile phone to access his Bitcoin wallet and electronically transferred $200,000 worth of Bitcoin to an undercover Bitcoin wallet. This interaction between the UC and LE was successfully audio- and video-recorded.

21. After LE had initiated the Bitcoin transfer, the UC then indicated that he was having problems and asked LE to open his Bitcoin wallet on his mobile phone to determine the status of the Bitcoin transfer. LE did so and voluntarily handed his mobile phone to the UC. At that point, Postal Inspectors and MSP Troopers entered the hotel room and detained LE. Due to the exigency of acting while LE's Bitcoin wallet was unlocked (as one can only gain access to a locked Bitcoin wallet with the private key, and law enforcement was not in possession of the private key to unlock LE's Bitcoin wallet), the remaining amount of Bitcoin in LE's Bitcoin wallet was seized and transferred to a separate undercover Bitcoin wallet. After having been advised of his rights per *Miranda*, LE voluntarily provided the password to unlock his mobile phone to law enforcement.

22. Following LE's arrest, law enforcement officers approached PIRES's Mercedes, which was located in the parking lot of the Hampton Inn. Officers immediately recognized the person sitting in the driver's seat of PIRES's Mercedes (PIRES), as someone they had observed on numerous occasions carrying boxes into and out of the entrance at 1749 Central Street in Stoughton, Massachusetts. Officers detained PIRES in the parking lot of the Hampton Inn and advised him of his *Miranda* rights. Officers questioned PIRES about the keys on his key ring. PIRES acknowledged that the keys belonged to him and identified one key on the key ring as being the key to the address in Stoughton where he had just been with LE. After execution of the search warrant at the Stoughton Location and the seizure of controlled substances from that location, PIRES was arrested. Later, agents confirmed that the key identified by PIRES was in fact a key to the Stoughton Location. Agents also confirmed that a key in LE's possession at the time of his arrest was a key to the Stoughton Location.

### Other Evidence Supporting My Belief that McCALL and PIRES Were Actively Involved with LE in the Manufacture and Distribution of Controlled Substances

23. Video surveillance footage established that LE, McCALL, and PIRES had been to 1749 Central Street in Stoughton, Massachusetts on multiple occasions prior to their arrest on March 27, 2019. Surveillance footage also confirmed that LE, McCALL, and PIRES routinely used an exterior spiral staircase which led directly to the Stoughton Location to enter the Stoughton Location. Surveillance footage also confirmed that PIRES entered the building of the Stoughton Location when neither LE nor McCALL were present.

24. Surveillance footage further confirmed that PIRES, who had a key to the Stoughton Location, aided LE in carrying at least one box believed to contain controlled substances into the building of the Stoughton Location and that LE, PIRES, and McCALL carried boxes believed to contain envelopes of controlled substances from *EastSideHigh* out of

the building of the Stoughton Location. As will be discussed, I further believe that LE, McCALL, and PIRES subsequently mailed various Priority Mail and Priority Mail Express envelopes containing controlled substances at various post offices in Southeastern Massachusetts. A few such examples are discussed below.

**March 7, 2019**

25. On March 7, 2019, data from a judicially-authorized GPS device attached to a gray 2018 BMW M3 bearing Vehicle Identification Number WBS8M9C5XJ5K99819 and Massachusetts registration 9HA965 that was registered to LE ("LE's BMW") indicated that LE's BMW was in the vicinity of the Canton CMRA Mailbox at approximately 1:06 p.m. According to USPS records, three days earlier (on March 4, 2019), a foreign parcel addressed to "BL Productons" was delivered to the Canton CMRA Mailbox. This parcel bore the same foreign return address that appeared on empty parcels found at the Stoughton Location and on seven parcels (three of which were addressed to "BL Productons" at the Canton CMRA Mailbox) that were seized in April 2019 and that contained vacuum-sealed bags of white-brown crystal-like substances, believed to be MDMA.

26. At approximately 1:15 p.m., video surveillance footage established that LE, operating LE's BMW, arrived in the parking lot of 1749 Central Street in Stoughton, Massachusetts. Shortly after LE arrived, PIRES (who had arrived at 1749 Central Street at approximately 1:11 p.m. and entered the building via the front entrance) walked from the direction of the front entrance of 1749 Central Street to LE's BMW. PIRES proceeded to help LE carry a number of cardboard parcels from LE's BMW into 1749 Central Street via the front entrance. At approximately 1:18 p.m., LE and PIRES exited 1749 Central Street via the front entrance and walked back towards LE's BMW. LE and PIRES each retrieved another cardboard

parcel from LE's BMW. LE and PIRES then carried the parcels into 1749 Central Street via the front entrance.

27.     One of the packages carried by LE and PIRES was consistent in size and shape (and bearing similar markings) of the foreign packages described in paragraph 25 above. Based upon my training and experience, as well as my participation in this investigation, I believe that LE collected a parcel containing controlled substances from the Canton CMRA Mailbox and, with PIRES's assistance, delivered those controlled substances to the Stoughton Location for processing and distribution.

28.     Later that day, at approximately 6:01 p.m., officers reviewing the surveillance footage observed McCALL and PIRES carrying one cardboard box each as they walked from the direction of the front entrance of 1749 Central Street to their respective vehicles. McCALL and PIRES got into their vehicles with their respective cardboard boxes and departed the area. Later, at approximately 10:40 p.m., video surveillance footage and GPS data established that LE returned to 1749 Central Street. LE exited from view of the surveillance camera while walking to the front entrance of the building at 1749 Central Street. At approximately 12:31 a.m. on March 8, 2019, video surveillance footage established that an individual believed to be LE entered LE's BMW and departed the area. The surveillance footage is too dark to determine whether the individual believed to be LE was carrying anything.

29.     USPS records indicate that the next morning (March 8, 2019) numerous Priority Mail Express and Priority Mail envelopes bearing a return address of "The Gift Card Company, 1629 Central St., Stoughton, MA 02072" were scanned as accepted at various post offices in Southeastern Massachusetts in and around Stoughton, Massachusetts:

| Post Office Scanned At | Number of Mailings | Return Address |
|---|---|---|
| North Easton | Nine (9) Priority Mail Express Envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Raynham Center | Four (4) Priority Mail Envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Rockland | Three (3) Priority Mail Express Envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| South Easton | Five (5) Priority Mail envelopes Two (2) Priority Mail Express Envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Stoughton | Eight (8) Priority Mail Express envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| West Bridgewater | Five (5) Priority Mail envelopes Two (2) Priority Mail Express envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Whitman | Two (2) Priority Mail Express envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |

30.     The distribution of these envelopes at various post offices suggests to me that LE, McCALL and PIRES mailed various envelopes containing controlled substances being distributed by *EastSideHigh* after leaving the building of the Stoughton Location. Several facts support this belief. First, McCALL and PIRES were each observed leaving the building of the Stoughton Location carrying a cardboard box. Second, the return address "1629 Central St., Stoughton, MA 02072" also appeared (although with a different sender name) on UC Parcel #2, which contained my undercover order of "5 Blue 'Dices' 180-210mg MDMA Pressed" from *EastSideHigh*. *See* March 26, 2019 Gentiluomo Affidavit, ¶¶ 63-70. Third, law enforcement

officers have determined that there is no company named "The Gift Card Company" operating at 1629 Central Street in Stoughton, Massachusetts. Fourth, the envelopes each bore postage that was purchased from a third-party vendor that allows customers to purchase postage using crypto-currency. Fifth, this pattern of mailing multiple envelopes with the same return address at different post offices is one known to have been employed by LE as well as by other distributors of controlled substances via the Dark Web. *See generally* March 26, 2019 Gentiluomo Affidavit, ¶¶ 61-85.

31.     GPS data from LE's BMW established that in the early morning hours of March 8, 2019, LE's BMW made stops in the vicinity of either blue collection boxes and/or Post Offices in the Rockland, Whitman and Raynham Center, Massachusetts areas. Additionally, security camera footage from the North Easton, Massachusetts Post Office and from the South Easton, Massachusetts Post Office for March 7, 2019 established that McCALL was at the North Easton, Massachusetts Post Office at approximately 6:22 p.m. and that McCALL was at the South Easton, Massachusetts Post Office at approximately 6:28 p.m. The GPS data and security camera footage leads me to believe that LE mailed the envelopes scanned at the Rockland, Whitman, and Raynham Center Post Offices and that McCALL mailed the envelopes scanned at the North Easton and South Easton Post Offices. Because no security camera footage is available from the Stoughton and West Bridgewater Post Offices, I do not know at this time who mailed the packages from these post offices.[4]

---

[4] I anticipate seeking warrants to obtain historical cell site information in the near future, which may aid in identifying who did the mailing at these post offices.

**March 11, 2019**

32. Similarly, on March 11, 2019, video surveillance footage from 1749 Central Street in Stoughton, Massachusetts indicates that at approximately 1:38 p.m., PIRES's Mercedes arrived and parked in the parking lot of 1749 Central Street. LE emerged from the rear of the building at 1749 Central Street and met PIRES in the parking lot as PIRES exited PIRES's Mercedes. LE and PIRES then walked to the rear of the building. Two minutes later, at approximately 1:40 p.m., LE and PIRES emerged from the rear of the building. LE and PIRES then stayed in the parking lot for a brief period of time before eventually walking towards the front entrance of 1749 Central Street and exiting from the view of the surveillance camera. Surveillance camera footage further shows that, at approximately 6:38 p.m. that evening, McCALL and PIRES, walking separately, appeared from the direction of the front entrance to 1749 Central Street. Both McCALL and PIRES were carrying one cardboard box each which they placed in their respective vehicles before departing 1749 Central Street in their vehicles.

33. USPS records indicate that the next morning (March 12, 2019) numerous Priority Mail Express and Priority Mail envelopes bearing a return address of "The Gift Card Company, 1629 Central St., Stoughton, MA 02072" were scanned as accepted at various post offices in Southeastern Massachusetts in and around Stoughton, Massachusetts:

| Post Office Scanned At | Number of Mailings | Return Address |
|---|---|---|
| North Easton | Six (6) Priority Mail envelopes<br>Two (2) Priority Mail Express Envelopes | The Gift Card Company<br>1629 Central St., Stoughton, MA 02072 |
| Rockland | Five (5) Priority Mail Express Envelopes | The Gift Card Company<br>1629 Central St., Stoughton, MA 02072 |

| Post Office Scanned At | Number of Mailings | Return Address |
|---|---|---|
| South Easton | Five (5) Priority Mail envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Stoughton | Five (5) Priority Mail envelopes Five (5) Priority Mail Express envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| West Bridgewater | Three (3) Priority Mail envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |
| Whitman | Five (5) Priority Mail Express envelopes | The Gift Card Company 1629 Central St., Stoughton, MA 02072 |

34. For the same reasons discussed in paragraph 30 above, the distribution of these envelopes at various post offices suggests to me that LE, McCALL and/or PIRES mailed various envelopes containing controlled substances being distributed by *EastSideHigh* after leaving the Stoughton Location.[5]

## CONCLUSION

35. Based upon the evidence set forth above and in the March 26, 2019 Gentiluomo Affidavit, as well as my training and experience, I submit that there is probable cause to believe that between a date uncertain but no later than in or about April 2018 and continuing through on

---

[5] Video surveillance footage shows that LE departed 1749 Central Street at approximately 8:11 p.m. on March 11, 2019 carrying a box which he placed in a vehicle; however, no GPS data is available for this date as LE was in a car accident while operating LE's BMW on March 10, and law enforcement did not install a GPS device on the vehicles he was operating thereafter. Security camera footage from the North Easton, Massachusetts Post Office and from the South Easton, Massachusetts Post Office for March 11, 2019 established that McCALL was at the North Easton, Massachusetts Post Office at approximately 6:55 p.m. and that McCALL was at the South Easton, Massachusetts Post Office at approximately 7:01 p.m.

or about March 27, 2019, LE, McCALL, and PIRES knowingly conspired with each other and with others known and unknown to manufacture, distribute, and possess with intent to distribute controlled substances, including 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a "ecstasy," a Schedule I controlled substance, and Ketamine, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). Accordingly, I request that arrest warrants for LE, McCALL, and PIRES be issued.

---
GINA GENTILUOMO
Postal Inspector
U.S. Postal Inspection Service

Subscribed to and sworn before me on this the 2nd day of May 2019.

---
HON. JUDITH G. DEIN
United States Magistrate Judge
District of Massachusetts